UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

MARINA DOBRININ;

    Plaintiff,

v.                                            Case No.: 25-cv-2043

CENTENE CORPORATION;
MHS HEALTH WISCONSIN,

    Defendants.

## COMPLAINT

NOW COMES the Plaintiff, Marina Dobrinin, through her counsel, Alan C. Olson & Associates, S.C., by Richard D. Crane, and, as and for, a Complaint against Defendants, Centene Corporation and MHS Health Wisconsin, alleges and shows as follows:

### NATURE OF CASE

1. Plaintiff Marina Dobrinin ("Plaintiff" or "Dobrinin") sues Defendants Centene Corporation ("Centene") and MHS Health Wisconsin ("MHS Health") under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et. seq.* ("FMLA"), to redress unlawful employment practices of Defendants, when they interfered with Dobrinin's exercise of her FMLA rights and retaliated against Dobrinin for exercising her rights under the FMLA when they terminated her employment. This case is also brought under the False Claims Act ("FCA") [31 U.S.C. §3729, *et seq.*], to redress Defendants' retaliation after Dobrinin reported what she reasonably believed to be Medicaid fraud. Dobrinin also brings a state law claim under California Labor Code § 1102.5(b) to redress Defendants' unlawful termination of

Dobrinin's employment in retaliation for reporting a violation of California Labor Code § 510(a).

## JURISDICTION AND VENUE

2. Jurisdiction over Dobrinin's claims under the Family and Medical Leave Act of 1993, and under the False Claims Act ("FCA") [31 U.S.C. §3729, *et seq.*] is conferred on this Court by 28 U.S.C. §§1331.

3. The Court has supplemental jurisdiction over Dobrinin's state law claim under California Code, Labor Code-Lab § 1102.5, pursuant to 28 U.S.C. § 1367, as this claim is so related in this action within original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

4. The Eastern District of Wisconsin is the proper federal venue for this action, pursuant to 28 U.S.C. §1391, in that Defendant, Centene Corporation has a registered agent in the Eastern District, operates within the Eastern District through its wholly owned subsidiary, MHS Health of Wisconsin, a Managed Care Organization, with offices at 801 S. 60th Street, Suite 200, West Allis, Wisconsin 53214, and Defendants' unlawful actions occurred within the Eastern District of Wisconsin.

## CONDITIONS PRECEDENT

5. All conditions precedent to this action, within the meaning of Rule 9(c), Fed. R. Civ. Pro., have been performed or have occurred.

## JURY DEMAND

6. Ms. Dobrinin demands that this case be tried before a jury of her peers.

PARTIES

7.     Plaintiff, Marina Dobrinin, is an adult residing at 13948 N. Lake Shore Drive, Mequon, WI 53097.

8.     Defendant Centene Corporation is a publicly held corporation, organized under the laws of the State of Delaware, with its principal office located at 7711 Carondelet Avenue, Suite 800, St. Louis, MO 63105.

9.     Defendant MHS Health of Wisconsin is a Managed Care Organization, and a wholly owned subsidiary of Centene Corporation, with its office at 801 S. 60th Street, Suite 200, West Allis, Wisconsin 53214.

**OPERATIVE FACTS**

10.    MHS Health of Wisconsin administers enrollment under Network Health's contract with the Wisconsin Department of Health Services for Network Health's BadgerCare Plus and Medicaid SSI members.

11.    Dobrinin commenced employment at Centene in May 2022 as Supervisor of Care Coordination at MHS Health of Wisconsin.

12.    Dobrinin's supervisor was Tina Niesen.

13.    Dobrinin received positive performance evaluations, and was categorized as "meeting expectations," for her work performance in 2022, 2023, and 2024.

14.    Dobrinin received pay increases and bonuses each year she was employed at Centene.

15.    In March 2023, Dobrinin took maternity leave.

3

16. Rachel Bennett ("Bennett"), a supervisor to whom Dobrinin did not report, made multiple derisive comments about Dobrinin's maternity leave, and on several occasions, referred to Dobrinin's maternity leave as a "vacation."

17. On or around January 15, 2025, Dobrinin requested twelve days of FMLA leave for surgery during the time period of Wednesday, February 5, 2025, through Friday, February 21, 2025.

18. After Dobrinin requested FMLA leave, two members of Bennett's team, Tiffany Dienstbier ("Dienstbier") and Marissa Smith ("Smith"), were transferred to Dobrinin's team.

19. In February 2025, Dobrinin's FMLA leave request was approved.

20. On or about February 4, 2025, Bennett responded sarcastically to Dobrinin's FMLA leave approval with the words, "let me take just two weeks off."

21. During the time period of February 5, 2025, through February 21, 2025, Dobrinin was on continuous FMLA leave.

22. Dobrinin returned to work from her FMLA leave on Monday, February 24, 2025.

23. After Dobrinin returned to work, she was granted intermittent FMLA leave for her medical condition.

24. Dobrinin learned on February 24, 2025, that during her FMLA leave, Defendants failed to have a Lead Preceptor provide onboarding and training to Dienstbier and Smith. Instead, they were trained by "peer mentors."

25. According to the training schedule, Dienstbier and Smith were scheduled for weekly one on one meetings with Dobrinin from February 24, 2025, through April 11, 2025.

4

26. In early March 2025, Bonnie Green ("Green") became Dobrinin's supervisor.

27. In April 2025, both Dienstbier and Smith were struggling with different components of their job duties, including call audits.

28. During April and May 2025, Dobrinin and Green repeatedly discussed how to assist Dienstbier and Smith to improve their performance.

29. During April and May 2025, Green approved of Dobrinin's efforts and plans to improve Dienstbier's and Smith's performance.

30. On May 16, 2025, Green approved of Dobrinin's efforts to improve the performance of another employee Dobrinin supervised.

31. After Dobrinin took a one-day intermittent FMLA leave day on May 20, 2025, Green's treatment of Dobrinin changed.

32. On May 22, 2025, Green directed Dienstbier and Smith to attend a meeting that took them away from their phone answering duties, without informing Dobrinin.

33. On May 27, 2025, Dobrinin took one day of intermittent FMLA leave.

34. On May 28, 2025, Green directed Dienstbier and Smith to attend a meeting that took them away from their phone answering duties, again without informing Dobrinin.

35. Because Dobrinin did not know where Dienstbier and Smith were, and why they were away from their phones, Dobrinin called them and sent each a message on Teams messenger while Dienstbier and Smith were in their meeting with Green.

36. When Dobrinin arrived for her one-on-one meeting with Green on May 29, 2025, Maureen Flannery, Vice President Population Health and Clinical Operations, MHS Health, was in attendance.

37. Green accused Dobrinin of "unprofessionalism" for trying to contact Dienstbier and Smith during their meeting with Green.

38. During the May 29, 2025 meeting, Green falsely told Dobrinin she had not properly trained Dienstbier and Smith and informed Dobrinin that Dienstbier and Smith would be moved to Bennett's team.

39. The inevitable result of transferring Dienstbier and Smith to Bennett's team would be lower production and inability to achieve team goals by Dobrinin's team.

40. During the May 29, 2025 meeting, Green falsely told Dobrinin for the first time that her behavior over the last few months was not meeting the Centene values and behaviors expected of a leader. Green failed to clarify her vague allegation.

41. On June 13, 2025, Dobrinin took a one-day intermittent FMLA leave.

42. On June 16, 2025, Green sent an email to Dobrinin, falsely alleging that on May 28, 2025, Dobrinin had violated company policy and engaged in conduct not in line with the company values.

43. On June 16, 2025, Green placed Dobrinin on a "Last Chance Agreement," with no prior warning or discipline.

44. Green told Dobrinin the Last Chance Agreement would expire on September 11, 2025.

45. Dobrinin supervised one employee residing in and working remotely from California.

46. California Code, Cal. Lab. Code section 510 prohibits employers from flexing overtime hours, requiring employers to compensate hourly workers at a rate of one and one-

half times the regular rate of pay for any employee who works in excess of eight hours in one workday.

47. In or around June 2025, Dobrinin was instructed by Green and Flannery to flex any overtime down to the single minute for all employees, including California-based employees, by falsely reporting minutes worked any particular day in excess of eight hours, as minutes worked during another day, so that no overtime compensation would be paid.

48. Despite Dobrinin's objection that this violated California employment law, Green insisted that Dobrinin flex the overtime hours of California-based employees to avoid having to pay overtime compensation.

49. During June 2025, Dobrinin complained to Centene's Human Resources Department that she had been ordered by Green to flex overtime hours worked by her California direct report.

50. Between June 18, 2025, and July 11, 2025, Dobrinin took four days of intermittent FMLA leave.

51. On July 17, 2025, Dobrinin took a one-day intermittent FMLA leave day.

52. When Dobrinin returned to work on July 18, 2025, Green told Dobrinin she was not allowed to provide performance coaching or discipline to one of her direct reports.

53. On or around July 22, 2025, Dobrinin sent messages to Melanie Kirkman, Centene's People Relations Team Lead, complaining about Green's misconduct and retaliation for exercising her FMLA rights, which interfered with Dobrinin's responsibilities and set her up to fail.

54. On July 23, 2025, Green had her 1-1 with Dobrinin and said nothing negative about Dobrinin's performance.

55. On July 24, 2025, Green emailed Dobrinin, falsely claiming that she was "confirming" from their meeting the prior day Dobrinin was not meeting expectations and could be subject to further discipline.

56. On July 25, 2025, Dobrinin took a one-day intermittent FMLA leave, which Green recorded as an unpaid, instead of following standard practice of flexing it.

57. Green also recoded all of Dobrinin's intermittent FMLA leave days, from Februry 2025 through July 25, 2025, as unpaid, even though Green had previously permitted Dobrinin to flex her time and make up the hours missed by working extra hours.

58. On July 27, 2025, Dobrinin complained that Green's change of her payroll record violated standard practice followed for all other salaried employees and forced Dobrinin to burn her PTO time.

59. On July 28, 2025, Dobrinin refuted the false claims in Green's July 24 email, and renewed her complaint that she was being retaliated against for exercising her FMLA rights.

60. Dobrinin took two intermittent FMLA leave days, on August 11, 2025, and August 12, 2025.

61. On August 11, 2025, Green referred to Dobrinin's FMLA leave as "summer time off."

62. On August 13, 2025, when Dobrinin returned from FMLA leave, Green ordered Dobrinin to immediately complete training that was not required until the end of September 2025. Green told Dobrinin that taking PTO or leave was not an excuse for not completing the training.

63. On August 25, 2025, Dobrinin discovered that two employees had been falsifying client assessment documentation.

64. Centene/MHS Health bills the State for every assessment completed.

65. On August 25, 2025, Dobrinin informed Green that she was reporting the fraud to Employee Relations/Compliance.

66. On August 26, 2025, Dobrinin received an email from Green, instructing Dobrinin to hold her fraud report and only present it as a neutral "information-gathering" recap, omitting any reference to potential misconduct.

67. Dobrinin objected that Green's instructions violated policy, created exposure for the company, and conflicted with how other employees had been treated.

68. Green insisted that Dobrinin pause her escalation to Employee Relations/Compliance.

69. On August 28, 2025, Dobrinin reported to Wildalis M. Caraballo, Centene Compliance Investigator, the potentially fraudulent documentation, and Green's instruction not to report it.

70. Dobrinin wrote, "[w]hile I understand the importance of gathering facts and identifying patterns, falsifying documentation is a serious compliance issue. Even a single occurrence meets the threshold for immediate escalation under company policy and past practice. Other employees have faced swift action, including ER referrals and termination recommendations, for this same conduct. It is unclear why [Green] has instructed a deviation in this case."

9

71. On or around September 3, 2025, Green informed Dobrinin that she was required to include Green in all communications with anyone, including but not limited to Human Resources, regarding the fraudulent documentation Dobrinin had reported.

72. In a September 3, 2025 email, Dobrinin informed Green that Centene's investigator had explicitly instructed Dobrinin that the details of the matter were confidential, and that Dobrinin was not to discuss the investigation with anyone.

73. In the September 3, 2025 email, Dobrinin wrote, to Green, that her insistence on being included in every communication undermined Dobrinin's ability to raise concerns without intimidation, and interfered with Dobrinin's duty to report misconduct.

74. On September 3, 2025, Dobrinin forwarded two emails from Green to Caraballo and complained that Green's insistence that she be included in communications about the investigation was intimidating, undermined the integrity of the process, and ctreated a conflict of interest.

75. On or around September 9, 2025, while Dobrinin was on intermittent FMLA leave, Green and Bennett directed the California-based employee on Dobrinin's team to flex minutes worked in excess of eight hours.

76. In her final one-on-one meeting with Green and Flannery, Dobrinin complained that Green and Bennett had violated California Labor Code section 510 by instructing the employee to flex overtime hours.

77. On September 10, 2025, Dobrinin met with Senior Compliance Investigator, Diana Holbert ("Holbert"), regarding the potentially fraudulent documentation discovered in Dobrinin's phone audits of the two employees.

78. During Dobrinin's September 10, 2025, meeting with Holbert, Hobert asked Dobrinin to complete additional audits on the two employees who had falsified documents.

79. In the audits conducted after the September 10, 2025 meeting, Dobrinin discovered the same pattern of fraudulent responses, proving that the previous fraudulent responses were not simply mistakes.

80. In a September 12, 2025, email to Holbert, Dobrinin included screen shots of the fraudulent documents.

81. Dobrinin met with Holbert again on or around September 15, 2025.

82. Dobrinin was terminated on September 16, 2025, because she exercised her FMLA rights; opposed violations of California Labor Code section 510; and, reported a violation of the False Claims Act.

## FIRST COUNT
## FAMILY AND MEDICAL LEAVE ACT INTERFERENCE
## 29 U.S.C. § 2615(a)(1)

83. As and for a first count, Dobrinin re-asserts the allegations recited above and fully incorporates those paragraphs herein by reference.

84. Dobrinin was terminated during the time period in which she had been granted permission to take intermittent FMLA leave.

85. Centene Corporation and MHS Health Wisconsin deprived Dobrinin of FMLA entitlement in violation of 29 U.S.C. § 2615(a)(1) on the basis that she was eligible for the FMLA's protections, Centene Corporation was covered by the FMLA, Dobrinin was entitled to intermittent leave under the FMLA, she provided sufficient notice of her intent to take FMLA-qualifying leave, and Dobrinin was denied the FMLA benefits to which she was entitled when her employment was terminated.

86. The intentional discriminatory practices of Centene Corporation and MHS Health Wisconsin were not made with good faith or reasonable grounds for believing that the conduct did not violate the Family Medical Leave Act of 1993, [29 U.S.C. § 2601, *et. seq.*].

87. The allegations more particularly described above caused Dobrinin to suffer compensatory damages for losses of wages, benefits, expenses, insurance, and medical expenses, all to her damage.

SECOND COUNT
FAMILY AND MEDICAL LEAVE ACT RETALIATION
29 U.S.C. § 2615(a)(1)

88. As and for a second count, Dobrinin reasserts the allegations recited in paragraphs 1-82 above and fully incorporates those paragraphs herein by reference.

89. Dobrinin was terminated in retaliation for exercising her rights to take intermittent FMLA leave.

90. Centene Corporation and MHS Health Wisconsin deprived Dobrinin of FMLA entitlement in violation of 29 U.S.C. § 2615(a)(1) on the basis that she was eligible for the FMLA's protections, Centene Corporation was covered by the FMLA, Dobrinin was entitled to intermittent leave under the FMLA, she provided sufficient notice of her intent to take FMLA-qualifying leave, and Dobrinin was denied the FMLA benefits to which she was entitled when her employment was terminated.

91. The intentional discriminatory practices of Centene Corporation and MHS Health Wisconsin were not made with good faith or reasonable grounds for believing that the conduct did not violate the Family Medical Leave Act of 1993, [29 U.S.C. § 2601, *et. seq.*].

92. The allegations more particularly described above caused Dobrinin to suffer compensatory damages for losses of wages, benefits, expenses, insurance, and medical expenses, all to her damage.

## THIRD COUNT
## FALSE CLAIMS ACT
### 31 U.S.C. § 3729(a)(1)(A)-(B); 31 U.S.C. § 3730(h)

93. As for a third count, Dobrinin re-asserts the allegations recited above in paragraphs 1-82 and fully incorporates those paragraphs herein by reference.

94. 31 U.S.C. §3729(a)(1)(A)-(B) prohibits any person from knowingly presenting a false or fraudulent claim for payment or for approval and prohibits knowingly making a false record or statement material to a false or fraudulent claim.

95. The allegations more particularly described above constitute retaliation against Dobrinin, in violation of the False Claims Act, [31 U.S.C. § 3730(h)(1)], for her actions taken to report fraudulent activity to her company's compliance office, in order to stop a violation of Subchapter III of the False Claims Act.

96. The allegations more particularly described above involving Centene's discharge of Dobrinin from its employ caused her to suffer losses of wages and benefits.

97. Under the False Claims Act, [31 U.S.C. § 3730(h)(2)], Dobrinin is entitled to relief for retaliatory discharge consisting of reinstatement with the same seniority status that she would have had but for the retaliation, two times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees.

## FOURTH COUNT
## RETALIATION
### CALIFORNIA CODE, LABOR CODE-LAB § 1102.5

98. As for a fourth count, Dobrinin re-asserts the allegations recited above in paragraphs 1-82 and fully incorporates those paragraphs herein by reference.

99. California Code, Labor Code-Lab § 510(a) states, "Eight hours of labor constitutes a day's work. Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee."

100. California Code, Labor Code-Lab § 1102.5 prohibits retaliation against any person disclosing information to a person with authority over the employee, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation.

101. The allegations more particularly described above constitute retaliation against Dobrinin, in violation of California Code, Labor Code-Lab § 1102.5, for her actions taken to remind Green, her supervisor, that, under California labor law, employers are not permitted to require California-based employees to flex or offset overtime hours.

102. The allegations more particularly described above involving Centene's discharge of Dobrinin from its employ caused her to suffer losses of wages and benefits.

103. Dobrinin is entitled to relief consisting of reinstatement, actual damages, including backpay, attorney's fees, and a civil penalty, not to exceed $10,000 per employee for each violation.

WHEREFORE, Wherefore Plaintiff, Marina Dobrinin, demands judgment against Defendants, Centene Corporation and MHS Health Wisconsin, as follows:

A. Compensatory damages for losses of wages, benefits, expenses, insurance, emotional pain and distress, mental anguish, and medical expenses;

B. reinstatement or compensation in lieu of reinstatement;

C. liquidated damages equal to the sum of the compensatory damages and monetary losses;

D. two times the amount of back pay under the False Claims Act;

E. a civil penalty of $10,000.00 per employee for each violation of California Code, Labor Code-Lab § 510(a)

F. costs, disbursements, prejudgment interest, actual attorney's fees and expert witness fees incurred in prosecuting these claims, together with interest on said fees; and

G. Such other relief as the Court deems just and equitable.

Dated this <u>29th</u> day of December, 2025.

<u>*Electronically signed by Richard D. Crane*</u>
Richard D. Crane, Bar No.: 1120763
Alan C. Olson, Bar No.: 1008953
Attorneys for Plaintiff
Alan C. Olson & Associates, S.C.
2880 S. Moorland Rd.
New Berlin, WI 53151
Telephone: (262) 785-9606
Fax: (262) 785-1324
Email: RCrane@Employee-Advocates.com
Email: AOlson@Employee-Advocates.com

15